Wood, J.
It will be seen by reference to the agreed case, that after the execution of the bond by which Burnett and Pendleton . became entitled to the liberties of the prison, which were then coextensive with the territorial limits of Portage county, the general assembly passed an act organizing the county of Summit, by which Portage and Tallmadge townships, though before in the county of Portage, were after March 3, 1840, a part of the county of Summit; and that on the 6th day of May following, the defendants Burnett, and Pendleton, went into the last-mentioned townships, in the county- of Summit. The question to be decided is, whether this is an escape.
It is very ingeniously argued by the plaintiff’s counsel, if not literally, at least, substantially, that the defendants Burnett, ana Pendleton, were bound by the terms of the obligation to contract to-day and expand to-morrow, so as to keep at all times within the limits of the county of Portage, to whatever changos those limits maybe subjected by the ordeal of legislation. But suppose these defendants had been residents in that part of Portage which is now Summit, at the passage of the act; the moment the act passed, they being beyond the prison liberties, according to the argument, would have been guilty of an escape. Counsel say not> provided they immediately ^returned into Portage county; [895 but why not? We know of no common law principle to save the penalty of the obligation by giving a reasonable time to return, and we have no authority to establish an arbitrary rule for that purpose. Suppose, at the passage of the act these defendants had not the power of locomotion, by reason of some bodily infirmity, what then is'to be done to save the condition of the bond ? The law requireth nothing impossible. It worketh an injury to no one, and another arbitrary rule must be set up to save the defendants, by requiring them to return only so soon as the disability is removed.
It is, however, argued by the defendant’s counsel, that they were bound to keep within the limits of Portage county, as they existed at the date of the obligation only, and that the general assembly could constitutionally pass no law which would limit or impair the rights of the defendants, as they then stood. Without *396 passing upon the constitutionality of the act, however, in its effee upon this bond, it will be found, we think, as to these defendant$} to continue the jail limits of Portage county precisely as they stood at the passage of the act. It provides, substantially, that all suits pending in Portage county should be prosecuted to final judgment and execution, the same as if the act had not passed; that the sheriff should serve and executo process, etc.
It is clear the legislative intention was, when a suit was once begun in Portage county, before Summit was organized, it should be consummated by final process by the sheriff of Portage, whose jurisdiction would still extend throughout its ancient limits, and, in our view, in such cases, they would still constitute the limits of the jail of Portage county.
The plea, then, embodying the agreed statement of facts, is in our opinion, a good answer to the declaration, 'and the demurrer should be overruled and .judgment given for the defendants.
Judgment for the defendants.
Thos. L. Hamer, for the defendant.
No argument for the plaintiff came to the hands of the reporter,